UNITED STATES BANKRUPTCY COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re                             : | | |
| TATYANA A. BERMAN,                : | Chapter 7 | |
| Debtor                            : | No. 04-45436 | |
| _____       : | | |
| DAVID M. NICKLESS,                : | | |
| Trustee                           : | | |
| v.                                : | A.P. No. 05-04225 | |
| AMALIA KESSLER,                   : | | |
| Defendant                         : | | |
| _____       : | | |

**MEMORANDUM OF DECISION ON MOTION OF DAVID M. NICKLESS FOR SUMMARY JUDGMENT, MOTION OF AMALIA KESSLER FOR SUMMARY JUDGMENT, AND JOINT MOTION OF DAVID M. NICKLESS, TRUSTEE, AND TATYANA BERMAN, DEBTOR, FOR AWARD OF COMPENSATORY DAMAGES AND PUNITIVE SANCTIONS FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY AND FOR ORDER DECLARING VOID AB INITIO AN ORDER OF THE CALIFORNIA SUPERIOR COURT ISSUED EX PARTE ON JUNE 13, 2006**

This matter came before the Court for a hearing on the Motion of Trustee David M. Nickless for Summary Judgment [Docket # 228], Motion of Defendant Amalia Kessler for Summary Judgment [#238], and Joint Motion of Trustee David M. Nickless and Debtor Tatyana Berman for Sanctions for Willful Violation of the Automatic Stay and Declaration of Order Void Ab Initio [Docket #247]. For the reasons set forth herein, the Trustee's Motion for Summary Judgment is GRANTED IN PART; the Defendant's Motion for Summary Judgment is DENIED; and the Trustee's Motion for Sanctions and Declaration of Order Void Ab Initio is GRANTED IN PART pending an evidentiary hearing on the issue of the appropriate sanctions.

1

## FACTS

Tatyana Berman ("Debtor") filed a petition for relief under Chapter 7 of the Bankruptcy Code and David M. Nickless ("Trustee") was appointed Trustee. On Schedule A of her petition, the Debtor listed a remainder interest in the real estate located at 2912 Second Street, Santa Monica, California ("Property"), which she indicated was subject to a life estate in Amalia Kessler ("Kessler"). The Debtor and Kessler received their respective interests in the Property under the Last Will and Testament ("Will") of Gita Caplan ("Caplan"). The Property is the focus of the current motions before the Court.

Paragraph Third-(10) of the Will devised the Property to the Debtor, and bequeathed a life estate to Kessler, specifically that she "*be allowed to remain living in said residence so long as she desires during her lifetime, rent free.*" The Will further required that "*Any expense in connection with said house, such as utilities, insurance, taxes, etc. are to be paid by Amalia Kessler while she has use of said residence*" ("Expenses Clause"). The Will also provided that "*In the event Tatyana Berman should predecease me, or the life tenancy given to Amalia Kessler should cease for any reason, then this bequest shall go to the children of Tatyana Berman, namely, Solomon Berman and Jacob Berman, or the survivor between them*" ("Alternate Vesting Clause"). Paragraph Sixth of the Will contained a no-contest clause which provided that "*If any person shall contest this Will or any of its parts or provisions or seek by legal action to obtain any part of my estate contrary to the provisions hereof, I specifically direct that…any share or interest given herein to such person shall be revoked and shall be paid, distributed and pass as though such person had died, without issue, before my death*" ("No-Contest Clause").

Kessler was a co-executor under the Will. She and her co-executor Mark Gilder filed their account with the Superior Court for the County of Los Angeles, California. The Superior Court issued an order ("1992 Order"), which stated in regards to the Property "*To Tatyana Berman, the [Property] with a life estate to Amalia Kessler…Amalia Kessler is to be allowed to remain living in said residence so long as she desires during her lifetime, rent free; Any expense in connection with said house, such as utilities, insurance, taxes, etc. are to be paid by Amaila Kessler while she has use of said residence.*" The Superior Court entered a final order in 1993 and discharged Kessler and her co-executor in 1994.[1] Kessler Declaration at p. 1. Kessler conceded at the Court's hearing on September 7,

---

[1] See the "Declaration of Amalia Kessler in Support of Nunc Pro Tunc Order Correcting Order For Preliminary Distribution," which was attached as an Exhibit 1 [#256] to the Joint Motion of the Trustee and Debtor for Sanctions and Declaration of Order Void Ab Initio [#247]. All references to this document will be cited as Kessler Declaration at p. #,.

2

2006[2] that the estate had been "fully and finally probated"; that "there was nothing" left to be done; and that there is "no estate pending" at the present time. TR. p. 17, 20, 22, 59.

Throughout this litigation, the Court has relied on the 1992 Order in recognizing the Debtor as holding the remainder interest in the Property. Whether anyone else, namely Solomon and Jacob Berman ("Debtors Sons"), holds a remainder interest was an issue discussed before this Court on March 23, 2006,[3] but at that hearing, the Court made clear it would continue to recognize the finality of the 1992 Order. TA., t. 3:06. Since that hearing, the Trustee received assignments from the Debtor's Sons of any expectancy interest they may have in the Property.[4] Meanwhile, Kessler, through her attorneys at Foley & Lardner, LLP,[5] sought to change the 1992 Order in the Superior Court. On April 18, 2006, they filed a document with the Superior Court, titled the Declaration of Amalia Kessler in Support of Nunc Pro Tunc Order Correcting Order For Preliminary Distribution ("Declaration",) which stated that it had recently "come to [Kessler's] attention" that the 1992 Order was incomplete because it "inadvertently" omitted the Alternate Vesting Clause, and requested that it be amended upon the Superior Court's own motion.[6] They did so ex parte, without notice to the Debtor or Trustee, without relief from stay from this Court, and without alerting the Superior Court of the pending bankruptcy or related adversary proceeding. The Superior Court issued a Nunc Pro Tunc Order ("2006 Order") on June 13, 2006, inserting the Alternate Vesting Clause. The Court, along with the Trustee, learned of the 2006 Order when Kessler filed for summary judgment on August 11, 2006.

There are other facts which cloud title to the Property. In 2001, Kessler executed and recorded a grant deed ("Deed") in Los Angeles County, California, which purported to convey the fee interest in the Property from Caplan to herself. Kessler conceded that she had no legal right to record the Deed or to assert ownership of the fee interest in the Property.[7] Kessler

---

[2] All references to the transcript of the Court's hearing on this date will be cited as TR., p. #.
[3] The Court takes judicial notice of its hearing on this date. All references to the tape of that hearing will be cited as TA., t. --:--.
[4] Kessler questions whether the assignments from the Debtor's Sons to the Trustee are valid, but offers no credible evidence raising doubt. However, that issue is not before the Court, and given the Court's finding herein that the 2006 Order is void ab initio, the Debtor, not her Sons, holds the remainder interest based on the 1992 Order.
[5] Foley & Lardner, LLP entered its appearance on behalf of Kessler on February 23, 2006. Until then, Kessler acted pro se.
[6] Kessler's co-executor joined in the Declaration by filing a separate document to that effect with the Superior Court
[7] During the initial stages of this litigation, Kessler stated in her pleadings to the Court that she was entitled to the fee interest in the Property. She claimed that Caplan told her as "excited utterances" that the Property would "pass to her eventually after five years of continuous possession and paying taxes", and also that she "acquired the estoppel of the deed in January 2001 through cypress [sic], and adverse possession." She subsequently withdrew those claims, **conceding that she is not entitled to the fee interest**. Specifically, Kessler's attorney conceded on her behalf that she is no longer "...purporting in any way to have **anything but a life estate** in th[e] [P]roperty." TR. p. 18. Kessler's attorney further stated that she "**absolutely should not have [filed the deed]**" and that it was

3

recorded the Deed, inter alia, to qualify for participation in the California State Controller's Office Property Tax Postponement Program ("Tax Postponement Program"). Under the Tax Postponement Program, a qualified homeowner is able to postpone payment of property taxes. In exchange, the State Controller's Office secures the amount owed with a lien on the property and requires it to be paid with interest upon the homeowner's death.[8] Kessler otherwise would not have qualified because she needed the consent of the remaindermen, whose whereabouts she claims were unknown to her. Kessler conceded that "she has done nothing to correct [the Deed]," the filing of which was arguably criminal under California law. TR., p. 18. CAL. PENAL CODE §115.5 (West 2006). She further conceded that at the time she filed the deed in 2001 and sought nunc pro tunc relief in 2006, there was no estate pending in the Superior Court. TR., p. 20, 59.

## POSITION OF THE PARTIES

The parties have filed cross motions for summary judgment focusing on two issues. The first is whether Kessler still has a valid life estate in the Property. The second is whether the Trustee abused his authority in pursuing this adversary proceeding.

As to the first issue, the Trustee seeks an order quieting title in his favor as well as recovery of the property taxes deferred by Kessler. The Trustee claims that Kessler no longer has a valid life estate in the Property for two reasons. First, the Trustee argues that Kessler's life estate should be revoked because she violated the Will's No-Contest Clause.[9] The Trustee bases this argument on two theories, namely that Kessler's actions amount to an indirect challenge as defined under California probate law and/or amount to a contest within the terms of the Will itself. He focuses on Kessler's actions of filing the Deed and claiming to own the fee interest either by Caplan's true intent, cy pres, or adverse possession. The Trustee believes that these actions were an attempt to obtain a greater interest than the Will provided to her. Kessler contends that she did not violate the No-Contest Clause and moves for summary judgment on

---

"**absolutely [the wrong thing to do].**" TR. p. 22. As the Court was preparing to issue this opinion, it was shocked to learn that Kessler is once again claiming to own the fee interest in the Property and has filed a new action in the Superior Court along with Sam Abbas. *Infra* note 13. Considering the new action, the Court is concerned that this litigant is out of control. Even though Kessler is represented by Foley & Lardner in this adversary proceeding and by the same firm in her attempt to alter the 1992 Order, she and Sam Abbas filed the most recent California action pro se. The Court is not aware whether Kessler and Abbas filed that action with the consent, or even the knowledge, of Foley & Lardner, or whether Kessler's counsel is no longer able to influence her behavior. The Court has issued an Order to Show Cause that will permit it to address these issues at a later date.

[8] The postponed amount with interest is due when the homeowner dies without a qualified individual continuing to reside in the property, moves out of or conveys title to the property, or becomes delinquent on future property taxes or senior liens.

[9] The Trustee is also seeking revocation of a $165,617.85 bequest Kessler received from the Will.

this ground. Kessler argues that the Trustee is the one who violated the No-Contest Clause by commencing litigation with regard to the Will. She merely defended against this adversary proceeding and should not be penalized for her initial pro se appearance during which time she claimed ownership of the fee interest, particularly because she later withdrew that claim.

Second, the Trustee argues that Kessler's life estate should be terminated because she failed to comply with the language in the Will requiring her to pay taxes, utilities, and other expenses of the Property. The Trustee reads this language as a strict condition of her life estate, which she forfeited by not paying taxes, instead deferring them under the Tax Postponement Program. In response, Kessler argues that the clause is not a condition subsequent requiring forfeiture, but instead is at the most a covenant, the breach of which would result in another remedy such as damages.

As to the second issue, Kessler argues that the Trustee abused his authority in rejecting a $400,000 purchase offer for the Debtor's remainder interest in the Property, instead pursuing this litigation against her. The Trustee responds that he rejected the offer in reliance on real estate appraisals valuing the Property at $1.8 million.

Lastly, the Trustee and the Debtor are seeking sanctions against Kessler, Foley & Lardner, LLP, and several of its attorneys including Charles Dougherty ("Attorney Dougherty"), Amy Kerrigan, Michael Taylor, and Courtney Henning. In support, they argue that Kessler, through her attorneys, willfully violated the automatic stay by seeking the 2006 Order from the Superior Court. They are asking this Court to declare the 2006 Order void ab initio as obtained in violation of the automatic stay and to issue sanctions claiming that the conduct was willful. \ Attorney Dougherty conceded that "it was [his] willfulness that resulted in those sequence of events," but claims that the 2006 Order was a ministerial correction, which did not violate the automatic stay."[10] TR., p. 61.

## DISCUSSION

### Violation of the Automatic Stay

The automatic stay is among the most basic of debtor protections under bankruptcy law. *In re Soares*, 107 F.3d 969, 975 (1st Cir. 1999) (citations omitted). For that reason, courts must display a certain rigor in reacting to violations of it. *Id.* at 975-6 (citations omitted). Section 362(a)(3) of the Bankruptcy Code provides that the filing of a bankruptcy petition stays any act

---

[10] At the September 7, 2006 hearing, Attorney Dougherty, lead counsel in this matter, accepted sole responsibility for the events which led to the Superior Court's issuance of the 2006 Order. TR., p. 51. Although the Court appreciates the gesture and will not hold the supporting attorneys accountable given his concession that he was the architect of the scheme, the Court cannot overlook the responsibility of Foley & Lardner, or Kessler, for that matter.

5

to exercise control over property of the estate. 11 U.S.C. §362(a)(3) (West 2006). Here, the parties knew that the Court deemed the Property part of the bankruptcy estate, and did so in reliance on the Superior Court's 1992 Order, which named the Debtor as the fee holder and Kessler as the life tenant. The Court made this clear to the parties at its hearing on March 23, 2006, a hearing at which Dougherty was present and in which he actively participated.[11] Then, despite knowing of the significance this Court attached to the 1992 Order, Attorney Dougherty sought to unilaterally change it in the Superior Court. Attorney Dougherty contends that this action did not violate the automatic stay. The Court sees it differently.

Attorney Dougherty argues that the Superior Court's action was nothing more than a ministerial correction. Case law suggests otherwise. First, the Superior Court's statement in the 2006 Order that it granted nunc pro tunc relief to "correct a clerical error" is not binding on this Court's determination of the issue. *See Soares*, 107 F.3d at 975 (rejecting argument that bankruptcy court is bound by state court's unsupported description of judgment as "ministerial"). Second, this does not fit the classic example of a "ministerial act." A ministerial act is one that is essentially clerical in nature, such as making an entry on the docket, not one that involves judicial function. *See Soares*, 107 F.3d at 974 (finding violation of automatic stay where judge issued order two weeks after bankruptcy filed). Here, a Superior Court judge issued an *order*, an act involving judicial discretion, not mere clerical entry. *See In re Braught*, 307 B.R. 399, 404 (Bankr. S.D.N.Y. 2004) (citing *In re Capgro Leasing Associates*, 169 B.R. 305, 316 (Bankr. E.D.N.Y. 1994)) (signing order constitutes continuation of judicial function).

Third, in receiving nunc pro tunc relief, Attorney Dougherty essentially obtained reformation of the 1992 Order, not a simple typographical correction. The 2006 Order was "not merely a ministerial act that preserve[d] the status quo,…but rather it [wa]s an act of legal substance that change[d] the relationship of the parties and effectively remove[d] property from the estate." *In re Benson*, 293 B.R. 234, 247 (Bankr. D. Ariz. 2003). Attorney Dougherty changed the relationship of the parties by potentially introducing the Debtor's Sons into this adversary proceeding in an effort to hinder administration of the bankruptcy estate. Under the 1992 Order, it was clear that the Debtor, *and only the Debtor*, held the remainder interest. Even if the exclusion of the Alternate Vesting Clause from the 1992 Order is deemed inadvertent as Attorney Dougherty argues, it would be in the nature of a judicial, not clerical, error because its

---

[11] Attorney Dougherty conceded that he remembered the March 23, 2006 hearing "exactly" and knew that the Court had made a substantive decision based on what he now claims is an "erroneous order." TR., p. 53, 64.

insertion in the 2006 Order materially changed the substance of the 1992 Order and disrupted the status quo of the bankruptcy. *See* 126 A.L.R. 956.

Fourth, Attorney Dougherty's own action cannot be considered ministerial because he intentionally set a process in motion, which strategically impacted this litigation. The automatic stay prevents different proceedings in different courts, which set in "motion a free-for-all in which opposing interests maneuver to capture" a share of the debtor's assets. *Soares*, 107 F.3d at 975 (quoting *Sunshine Dev., Inc. v. FDIC*, 33 F.3d 106, 114 (1st Cir. 1994)). Attorney Dougherty's filing of the Declaration set a process in motion and was the "necessary predicate" for the later issuance of the 2006 Order. *See In re Weber*, 283 B.R. 630, 634 (Bankr. D. Mass. 2002). The court in *Weber* addressed a similar situation. There, the attorney for the creditor knew of the pending bankruptcy case and sent a letter to a state court requesting that a special citation issue in that proceeding. *Id.* The state court issued the special citation, which required the debtor to respond to protect his rights in the property. *Id.* In finding a violation of the automatic stay, the *Weber* court stated

> It was [the attorney's] letter which prompted the Land Court to issue the citation and set the clock ticking against the [d]ebtor…In addition, the [creditor] had an obligation to advise the Land Court that the automatic stay precluded further action by that court…The offending act occurred during the pendency of the stay, and that act was a necessary predicate for the default judgment later issued against the [d]ebtor. The [creditor] argues that the letter from its attorney was a "mere ministerial act" and, accordingly, did not violate the automatic stay. The *Soares* court says otherwise. The Town further maintains that the letter sent from its attorney was intended to protect the [d]ebtor's right to due process in the state court proceeding. Common sense says otherwise. *Id.* at 634-5 (internal citations omitted).

Under *Weber*, it is the action of Attorney Dougherty, not the Superior Court, which is decisive. Attorney Dougherty, along with Foley & Lardner, actively sought an order from the Superior Court. He cannot now hide behind the 2006 Order claiming it was ministerial because he asked the Superior Court to issue it. His action is what prompted the Superior Court to grant nunc pro tunc relief and insert the Alternate Vesting Clause. Furthermore, unlike in *Weber*, there was no simultaneous state court proceeding; Caplan's Will had been probated and the 1992 Order, which was issued over fourteen years ago, has been recognized as valid since then. Attorney Dougherty conceded that there was "no estate pending" in the Superior Court at the time he sought the 2006 Order and that his "willfulness result[ed] in those sequence of events." TR., p. 59, 61. It was this litigation which impelled Kessler, through Attorney Dougherty, to seek alteration of the 1992 Order. *See Soares*, 107 F.3d at 973 (noting that date on which creditor asks state court to act is material on issue of good faith). It is obvious that their intent was to

7

impact the bankruptcy estate. The change sought did not have any bearing on Kessler's life estate whatsoever; it only impacted the remainder interest, which the Court clearly recognized as property of the estate.

Lastly, Attorney Dougherty arguably misled the Superior Court. He admitted that Kessler's Declaration did not even disclose the bankruptcy or the automatic stay to the Superior Court. TR., p. 55. The issue was presented as ministerial; when in fact, it clearly was not that simple. Glaringly, Kessler sought to "correct" one "clerical error"–the 1992 Order–without advising the Superior Court of another–the Deed– and seeking to have it too "corrected." Essentially, Attorney Dougherty used "self-help" to obtain a change in the 1992 Order, rather than filing an appropriate motion requesting relief from stay from this Court, or at the very least, notifying the Trustee of his actions. *See In re McCabe*, 345 B.R. 1, 6 (Bankr. D. Mass. 2006) (finding violation of automatic stay where defendant used "self-help" to amend LLC agreement to reflect the parties' intent).

For the foregoing reasons, the Court finds that Attorney Dougherty, Foley & Lardner, and Kessler willfully violated Section 362(a)(3) and will schedule an evidentiary hearing with regard to the appropriate sanctions.[12] The Court declares the 2006 Order void ab initio and recognizes the 1992 Order for purposes of this adversary proceeding  Furthermore, the Court orders Kessler to file a deed pursuant to the Court's Order in the appropriate county of California within 10 days of its issuance, which names David M. Nickless, in his representative capacity as Chapter 7 Trustee of the Estate of Tatyana Berman as the holder of the fee interest subject to Kessler's life estate. Furthermore, the Court authorizes David M. Nickless to take any action permissible under California law to provide record notice of this Court's Order.

**Standard for Summary Judgment**

Under Fed. R. Civ. P. 56, applicable through Fed. R. Bankr. P. 7056, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is only "genuine" if there is sufficient evidence to find in favor of the nonmoving party. *Hope*

---

[12] As noted previously, it has come to the Court's attention that Kessler has filed a new and separate action, pro se, in the Superior Court, titled "*Amalia Kessler & Sam Abbas, Plaintiffs vs. Nickless & Phillips P.C. and all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title thereto and DOES 1-5, INCLUSIVE,, Defendants.*" The complaint was filed on September 14, 2006, one week after the Court's hearing on these motions. The Court was shocked to learn of this development, which may prove to be yet another violation of the automatic stay, and the Court has contemporaneously herewith issued an Order to Show Cause.

*Furnace Associates, Inc. v. F.D.I.C.*, 71 F.3d 39, 42 (1st Cir. 1995) (citing *NASCO, Inc., v. Public Storage, Inc.*, 29 F.3d 28, 32 (1st Cir. 1994)). The evidence of the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986). If after reviewing the evidence, there can be only one reasonable conclusion, summary judgment is appropriate. *Id.* at 250. Furthermore, summary judgment may be entered in favor of the nonmoving party, even in the absence of a motion by that party. *Boston Public Hous. Tenants' Policy Council, Inc.* v. Lynn, 388 F. Supp. 493, 498 (D. Mass. 1974).

### Trustee's Abuse of Authority

In bankruptcy, the trustee has a duty to maximize the value of the estate. *Commodity Futures Trading Comm. v. Weintraub*, 471 U.S. 343, 352, 105 S. Ct. 1986, 1992 (1985). However, as stated by this Court, the trustee "also owes a duty to the debtor to maximize value, particularly where there is a real chance that all creditors may be paid in full and the Debtor may receive funds back." *In re Kazis*, 257 B.R. 112, 114 (Bankr. D. Mass. 2001). Kessler argues that the Trustee breached his duty to the estate by rejecting the $400,000 offer for the Debtor's remainder interest, which would have paid all expenses and claims in full. However, the Trustee did so in reliance on real estate appraisals, all but one of which estimated the Property's underlying value at $1.8 million. Kessler has not introduced any evidence to dispute the Property's value at $1.8 million. Given the discrepancy between the offer and appraisal figures and Kessler's age and admitted health problems based on the record before this Court, it was not unreasonable for the Trustee to pursue this litigation instead. There is a real possibility that the Debtor will receive significant surplus funds from the sale of the Property, and the Trustee has a duty to maximize that. Thus, the Court grants the Trustee summary judgment on this ground, and thereby denies Kessler's request for the same.

### Status of Kessler's Life Estate

#### *Jurisdiction*

Although conceded by the parties, the Court must first address its jurisdiction to determine the status of Kessler's life estate as some of the issues involve California probate law and may fall within the "probate exception" to federal jurisdiction.[13] *See Marshall v. Marshall*, 126 S. Ct. 1735, 164 L. Ed. 2d 480 (2006). The probate exception is a judicially created doctrine

---

[13] At the September 7, 2006 hearing, the Trustee stated that the Court "unequivocally has jurisdiction." TR., p. 39. In response to the same question, Attorney Dougherty stated that "the debtor's interest in the property is certainly within this Court's core jurisdiction," but added that the Court may find it more appropriate to abstain on those issues involving California law. TR., p. 41-2

9

which limits federal jurisdiction. *Id.* at 1746; *see also Markham v. Allen*, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256 (1946). The Supreme Court recently narrowed the probate exception in *Marshall*, stating that it "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside of those confines and otherwise within federal jurisdiction." *Marshall*, 126 S. Ct. at 1749. In reaching its decision, the Supreme Court reiterated the "interference" language in *Markham* that "federal courts of equity have jurisdiction to entertain suits 'in favor of creditors, legatees, and heirs' and other claimants against a decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." *Id.* at 1747 (citing *Markham*, 326 U.S. at 494). This Court reads *Marshall* to stand for the proposition that the probate exception prevents federal courts from exercising in rem jurisdiction over a res when a state court is simultaneously doing the same. *See id.* at 1748.

Here, Caplan's estate has long since been administered. The Superior Court issued its final order in 1993 and Kessler and her co-executor were discharged in 1994. Caplan's property is no longer in the custody of the Superior Court; it has been distributed to the beneficiaries under her Will. Furthermore, there are no proceedings with which this Court would interfere; Kessler conceded that there was no probate case pending in the Superior Court. For these reasons, the Court finds that the probate exception does not apply and that jurisdiction is proper.

Furthermore, a nonprobate court in California would have jurisdiction to resolve these matters. This Court is no different in that respect. "The California Supreme Court has made clear that even in a county having a formal probate department, a nonprobate department *does not* lack fundamental jurisdiction over a probate matter, and as that court held in *Dowdall v. Superior Court*, 183 Cal. 348, 191 P. 685 (1920), the probate department has 'primary' jurisdiction and a nonprobate department 'secondary' jurisdiction of probate-related proceedings." *Harnedy v. Whitty*, 2 Cal. Rptr. 3d 798, 807 (Cal. Ct. App. 2003) (emphasis in original) (citations omitted). In *Dowdall*, the court held that the probate department retains primary jurisdiction until the account is closed and the representative discharged. *Dowdall*, 191 P. at 687. Until that occurs, the nonprobate department has secondary jurisdiction and should postone its proceedings. *Id.* This embodies the same "interference" principal of the federal case law, and as stated above, there is no estate pending in the Superior Court; it has long since been administered.

The Court, however, may abstain from adjudicating those issues which it deems to be uniquely probate matters, even if otherwise permissible under *Marshall* and *Dowdall*. *See In re DiMartino*, 144 B.R. 225, 227 (Bankr. D. RI. 1992).

### Revocation for Violation of No-Contest Clause

The Court will abstain from deciding whether Kessler violated the No-Contest Clause in the Will, which would potentially result in complete revocation of her life estate. The issue rests solely on California probate law, and even if this Court has jurisdiction, it chooses not to exercise it. The Court believes that based on the best interests of the parties, sale of the Property and division of the proceeds, as discussed below, is a more appropriate remedy than revocation of her life estate, and for these reasons, the Court will abstain from ruling on the issue.

### Termination for Failure to Pay Taxes

Under California law, life tenants have certain duties. Specifically, "the owner of a life estate must keep the buildings and fences in repair from ordinary waste, and *must pay the taxes* and other annual charges, and a just proportion of extraordinary assessments benefiting the whole inheritance." CAL. CIV. PROC. CODE §840 (West 2006) (emphasis added). Some states have statutes authorizing forfeiture for failure of the life tenant to pay taxes; California does not have such a statute. *See* 16 A.L.R.3d 1344. Forfeiture, however, may well be called for under the terms of the Will, but this Court will not resolve that question.[14] Yet, that does not leave the Trustee without a remedy. Even Kessler has acknowledged that the Trustee is not without an alternative remedy, although she argues it is limited to damages for waste.[15] TR., p. 25-6. If the Court were to award damages here, the remedy would prove meaningless given Kessler's admitted financial situation. The Trustee, however, has another remedy, one not specifically discussed by the parties. Partition is an available remedy under the circumstances. *See* CAL. CIV. PROC. CODE §872.210 (West 2006); *see also Forrest v. Elam*, 151 Cal. Rptr. 591, 594 (Cal. Ct. App. 1979) (stating that partition provides a successful resolution where life tenant commits waste).

In California, partition of real property is a special statutory proceeding and is available only in limited instances. *See* §872.210. Section 872.210 of the California Code of Civil Procedure

---

[14] In their pleadings and at the hearing, the parties focused much of their discussion on whether the Expenses Clause is a strict condition subsequent, the noncompliance with which requires termination of Kessler's life estate. Like revocation under the No-Contest Clause, this issue rests solely on interpretation of the Will and California probate law, and the Court will likewise abstain from ruling on this issue. Furthermore, the Court finds it unnecessary to decide this issue in light of the fact that there is a statutory remedy for a life tenant's failure to pay taxes.

[15] Kessler conceded that "[the Trustee] might have an action for waste, [the Trustee] might have an action for some other form of damage, but [he does] not have a right to get the [P]roperty back." TR., p. 25-6.

11

permits partition of real property where the property is owned in successive estates. §872.210(a)(2). Under the former version of Section 872.210, partition of such estates was limited to actions by a life tenant against the remainderman. CAL. CIV. PROC. CODE § 752, (repealed 1976). *See Akagi v. Ishioka*, 120 Cal. Rptr. 807, 811 (Cal. Ct. App. 1975) (holding that remainderman had no right of action for partition against life tenant in the absence of special statutory authority). The new version expressly removes that limitation, allowing partition by a remainderman; the new version is applicable to this litigation. *See* LEGIS. COMM. COMMENT, §872.210(a)(2), Assembly 1976 Addition, 1980 Main Vol.. However, unlike partition of concurrent interests which may be partitioned as of right, partition of successive estates is permitted only if it is in the best interests of all the parties. CAL. CIV. PROC. CODE § 872.710 (West 2006). Under the statutory standard, "the court shall consider whether the possessory interest has become unduly burdensome by reason of taxes or other charges, expense of ordinary or extraordinary repairs, character of the property and change in the character of the property since creation of the estates, circumstances under which the estates were created and change in the circumstances since creation of the estates, and all other factors that would be considered by a court of equity having in mind the intent of the creator of the successive estates and the interests and needs of the successive owners." §872.710(c). If the court determines that, under the circumstances, sale and division of the proceeds would be more equitable than division of the property, the court shall order that the property be sold and the proceeds divided among the parties in accordance with their interests." CAL. CIV. PROC. CODE §872.820(b) (West 2006). "The court may, in all cases, order allowance, accounting, contribution, or other compensatory adjustment among the parties according to the principles of equity." CAL. CIV. PROC. CODE §872.140 (West 2006).

Here, the Property is owned in successive estates with Kessler as the life tenant and the Trustee as the fee holder, and therefore, partition (or sale and division) is an appropriate remedy under California law. The Court finds that sale and division would produce a more equitable result than partition because the Property is a single-family residence unable to be shared by the parties. Furthermore, under the circumstances, sale and division is in the best interests of the parties. First and foremost, there are no material facts in dispute. Kessler by her own admission has not paid the real estate taxes on the Property and is unable to do so; she has merely deferred them under the Tax Postponement Program, leaving them as a burden to the remaindermen. As of November 3, 2005, the amount of the state's growing tax lien totaled $38, 238.70 excluding interest. Caplan clearly did not intend this; in her Will, she explicitly stated that Kessler must pay

12

the real estate taxes on the Property. Also, in terms of equity considerations, Kessler only qualified for the Tax Postponement Program because she recorded the Deed. Also, the Property is in "dilapidated" condition to use Kessler's own words.[16] L., 2005. She stated, in the letter to the Assessment Appeals Board,, that the Property had suffered "exceptional depreciation" and "deferred maintenance"; that the "deteriorating condition" and "termite damage" were "exceptional conditions" that would "require expenditure well beyond what is normal for preventative maintenance"; that the "brick fence...[was] damaged by the heavy rains"; and that "the dilapidated house should be considered an 'underimprovement.'" L., 2005. Kessler has failed to comply with her duties under California law, requiring her as the life tenant to keep the buildings and fences in repair from ordinary waste and to pay taxes on the Property. Given the accumulating taxes and the ongoing neglect, it has become unduly burdensome for Kessler to maintain the Property and it has placed the Trustee's interest as the fee holder in serious jeopardy. The value of the Trustee's interest will continue to decline should Kessler be allowed to remain living in the Property, a result this Court is unwilling to accept.

For the foregoing reasons, the Court determines that the sale and division approach is the most appropriate and orders the Property to be sold by the Trustee and the proceeds divided equitably among the parties. Kessler is ordered to vacate the premises upon the Trustee's sale of the Property. The Court will schedule an evidentiary hearing to ascertain the present value of Amalia Kessler's life estate and the present amount of any deductions from that value, including the current tax lien held by the California State Controller's Office. The Court will then determine the proper allocation of the sale proceeds, compensating Amalia Kessler for the value of her life estate less any deductions and granting David M. Nickless, in his representative capacity as Chapter 7 Trustee of the Estate of Tatyana Berman, any remaining amount.

As set forth herein, the Trustee's Motion for Summary Judgment is GRANTED IN PART; the Defendant's Motion for Summary Judgment is DENIED; and the Trustee's Motion for Sanctions and Declaration of Order Void Ab Initio is GRANTED IN PART. In this regard, the Court makes the following findings: (1) the Trustee did not abuse his authority in rejecting the $400,000 purchase offer for the Property; (2) the Trustee is entitled to sale and division of the Property for Kessler's failure to pay taxes; and (3) Attorney Dougherty, Foley & Lardner, and Kessler willfully violated the automatic stay, and the Court will hold an evidentiary hearing

---

[16] Kessler sent a letter to the Assessment Appeals Board for the County of Los Angeles on May 12, 2005, in which she repeatedly referred to the Property's decaying condition. The letter was attached as Exhibit 7 to the Trustee's Memorandum of Law in Support of His Motion for Summary Judgment [#229]. All references to this letter will be cited as L., 2005.

on the issue of the appropriate sanctions. The Court abstains from ruling on revocation under the No-Contest Clause and termination under the Expenses Clause. Separate orders shall issue.

Date:   September 28, 2006

/s/ Joel B. Rosenthal
Joel B. Rosenthal
United States Bankruptcy Judge