# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE | : CHAPTER 7 |
| TATYANA A. BERMAN | : |
| DEBTOR | : CASE NO.04-45436-JBR |
| DAVID M. NICKLESS, CHAPTER 7 TRUSTEE, | : |
| PLAINTIFF, | : |
| v. | : AP. NO. 05-4225 |
| AMALIA KESSLER and | : |
| JOHN DOES 1-3, | : |
| DEFENDANTS. | : |

### MEMORANDUM OF DECISION ON MOTION OF DAVID M. NICKLESS, TRUSTEE, FOR SANCTIONS FOR WILFUL VIOLATION OF THE AUTOMATIC STAY AND FOR VIOLATION OF THIS COURT'S ORDER OF DECEMBER 11, 2006 (DOCKET # 397)

This matter came before the Court on a hearing on December 28, 2006 on the Motion of David M. Nickless, Trustee, for Sanctions for Willful Violation of the Automatic Stay and for Violations of this Court's Order of December 11, 2006 (Docket #397) and Amalia Kessler and Sam Abbas' Response, styled "Motion of Defendants in Opposition to Motion for Wilful Violation of the Automatic Stay - under Precludi Non Doctrine of Divested Jurisdiction under Probate Exception of the Federal Jurisdiction - Telephonic Hearing Requested"( Docket #403). Following the hearing at which the Court found that Kessler and Abbas continued to violate the automatic stay and were in contempt of this Court's orders, the Court again required Kessler and Abbas to dismiss certain actions which the Court found they commenced in violation of the automatic stay by January 8, 2007 or face incarceration and, in Kessler's case, a fine of $1,000 a day until the contempt is purged (docket #404). Because Kessler and Abbas are *pro se* and, in light of Kessler's misplaced reliance that her age and physical condition will somehow shield her from the sanctions which the Court intends to impose if the contempt continues, the Court

chronicles Kessler's and Abbas' actions not only to explain why it issued such an extraordinary order but also to emphasize to Kessler and Abbas that the Court is prepared to impose these sanctions if they continue with their current course of action.[1] That behavior ranges from filing inaccurate and repetitive pleadings, to dilatory tactics to avoid discovery, to wilfully defying orders of this Court. Indeed their behavior is extreme and includes misrepresenting to this Court the orders of other courts; thus the Court intends to provide copies of this Memorandum to the other courts where the Court believes actions commenced by Kessler and Abbas are pending lest this Court's orders be misrepresented.

## FACTS AND HISTORY OF THE CASE

In September 2004 Tatyana Berman (the "Debtor"), who was bequeathed a remainder interest in property in Santa Monica, California (the "Property") by her now-deceased cousin (the "Testatrix"), filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code. David Nickless (the "Trustee") was appointed Chapter 7 trustee when the original trustee resigned. Kessler, who is 84 years old, was bequeathed a life estate in the Property. A few months after the Trustee's appointment, he commenced the above adversary proceeding against Kessler, co-executor of the Testatrix's estate, and John Does, unknown individuals believed to be residing at the Property. The Trustee seeks a declaratory judgment and turnover of the Property. In essence he alleges that Kessler violated the terms of the will by not paying the ongoing

---

[1] As the Court was preparing to issue this Memorandum of Decision, Kessler and Abbas filed, by telecopier, an appeal of the Order of December 28, 2006 (docket #407). They have not requested a stay of the Order although in the past, they have sought stays pending appeal. As discussed *infra*, when the Court did grant a stay of the order permitting the Trustee to sell the Property, the stay was conditioned upon the posting of a bond. The bond was never posted and the stay expired on December 23, 2006.

expenses of the Property[2] and that she violated the will's anti-contest provision by fraudulently recording a deed purporting to convey full title to the Property to herself.[3] On September 20, 2005 Kessler, acting *pro se*, filed an answer (docket #9) replete with inconsistencies and non sequiturs. For example she denied that anyone else resides at the Property with her but later in the answer stated that Sam Abbas has been "full time on [the Property] since 2000;[4] she acknowledged that she received a life estate in the Property but then claimed to own the Property by adverse possession. Kessler asserted that she did not challenge the will during the Testatrix's life or before the probate court in California and that she is entitled to the rents and profits of the Property when there is no evidence any such rents or profits exist. In the answer she also claimed that all taxes have been paid, a statement which later in these proceedings she admitted is not correct.[5] Kessler also asserted a counterclaim against the Trustee in which she sought to recover

---

[2]The will states in relevant part that
> my friend, Amalia Kessler, be allowed to remain living in [the Property] so long as she desires during her lifetime, rent free. Any expenses in connection with [the Property], such as utilities, insurance, taxes, etc. are to be paid by Amalia Kessler while she has use of [the Property.]

[3]The will provides
> If any person shall contest this will or any of its parts or provisions or seek legal action to obtain any part of my estate contrary to the provisions hereof, I specifically direct that such person is not to receive any share, part or benefit of or from my estate, and any share or interest given to such person shall be revoked and shall be paid as though such person had died, without issue, before my death.

[4]Based upon this statement, it appears that Abbas is one of the John Does. He has never filed an answer, however.

[5]At several points during this proceeding, Kessler acknowledged that she had not paid the real estate taxes and alleged that she recorded the deed in order to qualify as the owner of the

from him, although he is the trustee of the *bankruptcy* estate, the remainder of the cash bequest Kessler did not receive from the *Testatrix's* estate.[6]

The Trustee moved to dismiss the counterclaims or to require Kessler to file a more definite statement (docket #10). The Court scheduled this motion for an October 20, 2005 hearing. Kessler then filed a "Motion to Dismiss on the Grounds of Forun Non Conviens"(docket # 13), which the Court also scheduled for hearing on October 20, 2005 and, *sua sponte* granted permission for Kessler to attend the hearing by telephone. On October 4, 2005 Kessler sought a continuance of the hearing but only as to the Trustee's motion to dismiss the counterclaims until November 23, 2005; among other things she stated that she needed to consult counsel. The Court denied this request. Shortly thereafter Kessler filed a motion to dismiss the adversary proceeding for lack of service and jurisdiction on the grounds that the Trustee served the summons and complaint by mail,[7] along with a memorandum of law and an affidavit (docket #20 and #21). At the October 20, 2005 hearing, which both Kessler and Abbas attended by telephone, the Court directed Kessler to file a more definite statement of her counterclaims, which she subsequently did, and denied her requests that the adversary proceeding be dismissed (docket #24 and #26). Kessler did not appeal these orders.

Kessler next filed a motion to dismiss the adversary proceeding on the grounds that it was

---

Property to defer the payment of real estate taxes under a program designed to assist elderly homeowners. At other times, she alleged that the Testatrix promised to leave the Property to her and thus she is entitled to ownership of the Property. In any event taxes are accruing, along with interest, contrary to the provisions of the will. *See* note 2, *supra*.

[6] Apparently there was an insufficient amount in the Testatrix's estate to pay the cash bequests in full.

[7] Fed. R. Bankr. P. 7004(b) provides for nationwide service of process by first class mail.

4

barred by the statute of limitations and fraud (docket #33).[8] The pleadings, however, recite many of the same arguments previously raised, including that Massachusetts is not the appropriate forum for this action. For the first time, Abbas, as well as Kessler, signed the pleadings. The Court held a telephonic hearing and denied the motion with the following notation: "DENIED. FOR THE REASONS SET FORTH ON THE RECORD, THE MOTION (WHICH IS BARELY INTELLIGIBLE) IS DENIED" (docket #53). The parties did not appeal this order.

At approximately the same time, the Trustee filed a motion to extend the discovery deadline (docket #35) set by the Court's pretrial order as Kessler had not responded to interrogatories. In response to the Trustee's motion, Kessler filed a pleading styled as "Answer and Objections of the Defendants to Plaintiffs [sic] First Set of Interrogatories" (docket #40) and signed by Kessler and Abbas. Despite the fact that Kessler and Abbas continued to represent themselves, they argued that the discovery sought "[i]mproperly invades the attorney workproduct privilege Since [sic] it seeks mental impressions of defendants [sic] counsel by asking for all information Available [sic] to defendants." They repeatedly invoked a privilege unknown to this Court and perhaps the legal community at large: "the taxpayers privilege."[9] The Court heard and allowed the Trustee's motion for an extension at the December 15, 2005 hearing.

At the December 15, 2005 hearing, Abbas, who is not an attorney, attempted to represent

---

[8] Because of the confused and rambling motion and memorandum it is unclear whether Kessler was referring to the statute of frauds or the intentional tort of fraud.

[9] Since the "Answer and Objection" fails to provide the interrogatories, the Court can only surmise that the interrogatories were attempting to elicit information about the real estate taxes and perhaps Kessler's ability to pay them.

Kessler. This lead to the Court *sua sponte* issuing an order requiring Kessler to either represent herself or hire counsel (docket #57).[10] On December 27, 2005, Kessler and Abbas filed a notice of appeal of this order (docket #65) and elected to have the appeal heard at the district court (docket #66). This appeal was subsequently dismissed by this Court under District Court Local Rule 203(A) (docket #175).

Two days before the scheduled December 15, 2005 hearing, Kessler and Abbas filed a motion to withdraw the reference or abstain (docket #49) to which the Trustee objected (docket #63). Acting without a hearing, on January 4, 2006 the Court denied the motion to withdraw the reference to the extent it was really a motion seeking abstention.[11] No appeal was taken. At the

---

[10]The Court also ordered Kessler to file a memorandum of law regarding her repeated assertion that she is entitled to a jury trial in this declaratory judgment and turnover proceeding. What she ultimately filed was a "Motion for an Inviolate Jury Trial Pursuant to Section 3 Article 1 of the State of California Constitution and the Seventh Amendment of the United States Constitution (docket #71). It is a rambling pleading, full of inapplicable statements of law, that does not support her claim of entitlement to a jury trial. Unfortunately this pleading is typical of many filed by Kessler and Abbas. Their pleadings, which they generally sent to the Court by telecopier, are often incomplete and repetitive, have attached surplus pages that appear to have nothing to do with the specific pleading, and contain statements of law that are recited out of context, sometimes incorrect, and often are irrelevant to the issues before the Court. Kessler has filed notices of appeal that the Clerk's Office, after diligent attempts, cannot link to any order while at other times she files notices of appeals that purport to appeal many of the orders for which the time to appeal has long since expired, orders from which she has already taken an appeal, and, in some cases, even orders for which an appeal has been dismissed. The Court has tried to construe her pleadings in such a way as to preserve her appeals whenever possible. *See, e.g.* Order of February 16, 2006 (docket #160).

[11]The motion specifically requested relief under the *Pullman* abstention doctrine. *Pullman* abstention requires a federal court to abstain when confronted with an unsettled question of state law that must be resolved prior to the resolution of the federal issue. *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941). As the Supreme Court has stated, one of the primary types of federal abstention, "referred to as *Pullman* abstention, involves an inquiry focused on the possibility that the state courts may interpret a challenged state statute so as to eliminate or at least to alter materially, the constitutional question...." *Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 477, 97 S.Ct. 1898, 1902-03, 52 L.Ed.2d 513

6

same time the Court transmitted the motion to the district court so that the district court could deal with the request to withdraw the reference. On February 17, 2006 the district court denied the motion to withdraw the reference.

Shortly after the December 15, 2005 hearing the parties again engaged in a discovery dispute when Kessler, this time without Abbas, filed a unilateral report attesting to a conference under Bankr. R. Civ. P. 7026(f) with a proposed discovery plan (docket #60). The Trustee immediately moved to strike (docket #61) as the report was not a joint report as called for under the Court's pretrial order and, more importantly, the Trustee did not agree to the proposed discovery plan and did not participate in preparing the plan. Moreover, he stated that Kessler never responded to the proposed joint report he sent her. The Trustee also filed a motion to compel discovery (docket #62), noting that Kessler never complied with the automatic disclosure requirements and efforts to resolve his ongoing discovery disputes with her proved unsuccessful. The Court acted on these motions without a hearing and on January 4, 2006 ordered Kessler to make the required automatic disclosures, to respond to the Trustee's discovery requests,[12] and to file a memorandum of law in support of her alleged privileges. The order also contained a statement encouraging Kessler to retain counsel.[13] Almost immediately Kessler responded by

---

(1977).

[12]On January 12, 2006, Kessler appealed the order compelling discovery and elected to have the appeal heard in the district court. The Court waived the filing fee for the appeal. On January 3, 2007 the district court dismissed this appeal because Kessler failed to file a brief by the extended deadline she had requested and then failed to respond to the court's order to show cause why she failed to comply with that deadline.

[13]The Court notes that recently more parties have been attempting to represent themselves even in rather complex matters and as a result, the Court frequently and often repeatedly urges

7

filing a series of motions: one for a protective order alleging that she should not be compelled to respond to discovery or that discovery be limited to a written deposition because she was elderly, ill, on a fixed income, and had no attorney representing her (docket # 87); one again seeking to transfer the adversary proceeding to California (docket # 90); and one seeking to have me disqualify myself on the basis of several false allegations, including that I am biased against "out of towners," that I hold a financial interest in this litigation and its outcome, and that I have had *ex parte* communications with the Trustee (docket #85). The motion to transfer venue was denied without a hearing by order of January 12, 2006 (docket # 98) as the motion raised the same arguments previously rejected in this Court's earlier order denying the motion to dismiss, an order which had not been appealed. On January 27, 2006 Kessler filed an untimely appeal (docket #113) of the January 12, 2006 order denying the motion to transfer venue, along with an election to have that appeal heard by the district court. That appeal was dismissed by this Court pursuant to LR, D. Mass Rule 203(A) (docket #120).

On January 12, 2006 the Court, and by that term I am referring to myself in my official capacity, also denied the motion to disqualify me without a hearing (docket #97). Given the seriousness of Kessler's allegations that the Court has, again specifically meaning I have, acted improperly in this matter, the Court wishes to be clear that there have been several colloquies

---

them to retain counsel. Kessler apparently misunderstood the Court's initial urging as she asked orally and in writing to have this Court appoint counsel and that the Court waive her payment of attorneys' fees. Yet, as discussed elsewhere, when Kessler had not one but two premier bankruptcy attorneys represent her, she refused to cooperate with them and commenced proceedings *pro se* causing both attorneys and their law firms to ask and obtain permission to withdraw from this case, thus leaving Kessler once again unrepresented.

8

regarding these charges with Kessler and Abbas during various hearings.[14] To ensure that I do not, and did not, hold any pecuniary interest in this litigation or have any relationship that might appear as improper, I have questioned Kessler and Abbas on several occasions and asked them to describe the source of their concern so that I may take appropriate action, including recusing myself if necessary. Their only explanation is that the Trustee earns a commission from the bankruptcy estate and I must rule on his commission and attorneys' fees. The only basis for their accusation of *ex parte* communications is that I, as noted, have ruled on some of their motions without a hearing. As I have explained to Kessler and Abbas on a number of occasions, that the Trustee earns a commission as set forth in the Bankruptcy Code and that I must review his fees does not render either of us unable to carry out our respective responsibilities. I have ruled on motions without a hearing when I believed it was appropriate to do so. As I have explained to Kessler and Abbas, a bankruptcy court is not required to hold a hearing on every motion that comes before it. That any court rules on a matter without hearing oral arguments should not be seen as a nefarious plot to deny litigants their day in court nor as evidence that a court is having *ex parte* contact with another party. Despite this Court's efforts to explore Kessler and Abbas' concerns and despite this Court's attempts to explain that their proffered "reasons" why they believe they are being treat unfairly do not support the charges they have hurled at this Court and the Trustee, they persist in alleging the themes of bias, prejudice, and financial interest. Although the Court will not detail the attacks any further, it notes that much of Kessler's and Abbas' discourse has devolved into *ad hominem* attacks and the invectives hurled by them have become

---

[14]At the first hearing held on October 20, 2005, Kessler and Abbas argued that courts in Massachusetts would be prejudiced against them. *See* transcript of October 20, 2005 hearing (docket #168).

9

increasingly inappropriate.[15]

Also acting without a hearing, on January 12, 2006 the Court granted so much of Kessler's request that sought additional time to respond to the outstanding discovery. On February 2, 2006 Kessler filed a motion to stay the taking of her deposition and to quash the deposition notice (docket # 129) on the grounds that she is elderly and the Trustee was deposing her as a form of harassment.[16] The motion was denied and she and Abbas were ordered to appear for their depositions in California..[17] Kessler and Abbas never appeared for their depositions causing the Trustee to ask for sanctions (docket #150). In response the Court issued its first orders to show cause to Kessler (docket #158) and to Abbas (docket #157).[18] The Court arranged for Kessler and

---

[15] The Court mentions these attacks not as a basis for sanctions against Kessler and Abbas, although frankly their behavior is sanctionable, but to give context to the Court's ultimate conclusion, supported by Kessler's and Abbas' own statements that they will do whatever it takes to keep the Property. An example of Kessler's and Abbas' tirades against this Court can be found in the transcript of the December 8, 2006 hearing (docket #390 at pp. 20-22).

[16] The motion and accompanying papers suggest that Kessler and Abbas should both be protected from discovery. Among the confused papers that constitute this pleading is a proposed order for this Court to appoint a referee under California law, again on the grounds that the Trustee is violating the law with the Court's tacit approval.

[17] Kessler appealed this order (docket #143) and elected to have the appeal heard by the district court. This Court dismissed the appeal pursuant to LR, D. Mass. Rule 203(a) when Kessler failed to file a statement of issues or designation of the record (docket #173). Abbas did not appeal the order that he appear for his deposition.

[18] During the interval between the time when the Court ordered that Kessler and Abbas appear for their depositions and when they actually failed to appear, a series of additional discovery disputes ensued. One point of mention during this period is that Abbas, who referred to himself a Kessler's guardian, was ordered to produce a certificate of appointment. Ultimately all Abbas produced was his statement that he was is a "guardian *de son tort*." He is not Kessler's guardian; he is, as Kessler noted in her original answer a friend who resides at the Property with her.

10

Abbas to appear by videoconference from the bankruptcy court located in Los Angeles, California for a show cause hearing on March 23, 2006. Shortly before this hearing, Attorney Charles Dougherty filed an appearance on Kessler's behalf and appeared at the March 23, 2006 hearing. Kessler and Abbas attended telephonically.[19] Abbas argued that Kessler was ill on the day of the scheduled deposition and he had to take her to the doctor's.[20] The argument does not address why they failed to call the Trustee on February 6, 2006 when they were scheduled to be deposed. It does not address why they failed to appear the next day although the Trustee left a message on Kessler and Abbas' answering machine that the Trustee was still in California and able to take their depositions on February 7, 2006.[21] More troubling is the fact that while the Defendants argued that Kessler was ill and Abbas had to attend to her, they nevertheless filed a lawsuit against the Trustee in the United States District Court for the Central District of California (CV 06-712-sjo (OPX)) on February 7, 2006, the very day they were to be deposed. The Court found

---

[19] Kessler sought and obtained permission to attend telephonically. Abbas did not. In fact Abbas only joined the hearing after the Court reminded Kessler that Abbas was also instructed to appear for a show cause hearing. See transcript of March 23, 2006 hearing at pp. 2-5 (docket #281).

[20] Abbas represented that he told the Trustee to come to the doctor's office to question Kessler but the Trustee refused. The Trustee testified via affidavit that Abbas would not tell him where the doctor's office was located. The Court also notes that when it attempted to have the order to show cause served on Abbas by Federal Express, as well as first class mail, the Federal Express delivery person reported that he was told Abbas moved and left no forwarding address. At the March 23, 2006 hearing Abbas denied that he made that statement and thought that a neighbor might have said it. The Court finds Abbas' statements regarding the offer he made to have the Trustee question Kessler at her doctor's office and who made the misrepresentation to the Federal Express delivery person not credible.

[21] As set forth in the Trustee affidavit and as he represented at the hearing, Abbas had received the Trustee's message but refused to appear on the grounds that he was again taking Kessler to see her doctor. See Affidavit of David M. Nickless (docket #151) and Transcript at pp 16-19 (docket #281).

11

both Kessler and Abbas in contempt of the order compelling them to appear for their depositions in California and issued sanctions, including a sanction of $1,250 against Abbas (docket #202). The sanction was to be paid by April 23, 2006. Abbas ignored this order leading the Court to issue a further order requiring Abbas to pay the $1,250 sanction in $100 installments beginning December 15, 2006, an order he also ignored.[22] Based upon Attorney Dougherty's representation that he had asked Kessler to arrange for dismissal of the California action against the Trustee, the Court did not issue an order to show cause with respect to that lawsuit.[23]

Attorney Dougherty worked to resolve the discovery problems, amended some pleadings and withdrew others filed by Kessler; in other words he attempted to assist Kessler in moving this matter forward in a competent and professional manner. Attorney Dougherty withdrew and was replaced by Attorney Daniel Glosband.[24] Attorney Glosband recently obtained permission to

---

[22]The Court issued a further order that Abbas make the first $100 payment by January 4, 2006 or he would be incarcerated for contempt. The first payment was then made.

[23]Although the action is brought against the Trustee's law firm, it seeks to deter him from fulfilling his responsibilities to investigate the existence of assets of the Debtor and to liquidate them. Most troubling is the assertion in the complaint that Abbas is entitled to title to the Property.

[24]Glosband eventually succeeded Dougherty after the Court issued an order to show cause (docket #274) against Dougherty, his law firm, Kessler, and Abbas for violating the automatic stay by filing a lawsuit against the Trustee in the California Superior Court (Case No. SC 091077) essentially seeking to obtain control of the Property. At the show cause hearing, Abbas acknowledged that Dougherty and his law firm were not aware that Kessler and Abbas commenced this action. Dougherty represented that Kessler would dismiss the action promptly and thus he show cause orders were released as to all parties except Abbas. The hearing on the Abbas show cause is scheduled for February 1, 2007.
   This show cause order was issued contemporaneously with the "Order and Notice of Evidentiary Hearing"(docket #275) in which the Court found that Dougherty, his law firm, and Kessler violated the automatic stay by seeking and obtaining from the California probate court an *ex parte* order revising, *nunc pro tunc*, its order on the distribution of the Testatrix's estate issued in 1992. The *nunc pro tunc* order, which the Court has declared void (docket #271), attempts to

withdraw as Kessler's attorney as she and Abbas persist in filing pleadings and commencing actions *pro se*. The Court is aware of the enormous effort put forth by both Attorney Dougherty and Attorney Glosband and their respective firms.

During the period when Attorney Dougherty represented Kessler, the Trustee filed a motion for summary judgment (docket #228). Attorney Dougherty filed a similar motion in Kessler's behalf (docket #238). The Court abstained from the issue of whenever Kessler's life estate has been terminated or ought to be rescinded but granted essentially the rest of the Trustee's motion (docket #271). Specifically the Court authorized the Trustee to market the Property, a remedy available under California law, and, if the Trustee did not undertake to have the California probate court, or other court of competent jurisdiction, determine the status of Kessler's life estate, the Court stated it would conduct a hearing on the distribution of sale proceeds. Kessler and Abbas were to vacate the Property only upon the consummation of a sale. Kessler was also ordered to file a deed conveying the Property to the Trustee in his representative capacity, subject to her life estate, essentially to correct the fraudulent deed she had previously recorded, within 10 days of the Court's order. Kessler sought a stay of the order granting summary judgment and this Court granted that request but conditioned the stay upon the posting of a bond to offset the Property's depreciation due to the mounting unpaid real estate taxes and physical deterioration of the Property.[25] Kessler and Abbas were given a period of time to obtain

---

call into question whether the Debtor holds even a remainder interest under the will. *See* "Memorandum of Decision" (docket #270) for an expanded discussion of these facts. Dougherty, his law firm, and Kessler's appeal from the "Order and Notice of Evidentiary Hearing" is currently pending in the district court (Case No. 06-40240).

[25]Kessler and Abbas have frequently represented that the Property is in poor condition.

13

a bond. Despite several extensions of time in which to post a bond, no bond was ever posted and the stay has expired. The time within which Kessler was to file a deed giving title in the Property to the Trustee has also now expired. The Court is not aware that such a deed has been filed.

The most egregious acts committed by Kessler and Abbas are those related to the violation of the automatic stay and the Court's orders that they stop such behavior and dismiss the offending actions. They have done neither. Kessler and Abbas did not dismiss California district court action they commenced against the Trustee; that court dismissed the action for lack of prosecution.[26] Despite the dismissal, they continue to file pleadings in that action. They also have instituted and/or continued a proceeding in the California probate court (WAP023025), they allege that they have appealed orders of this Court to at least one court in California (Court of Appeal, Second Appellate, Case No. B191667), and they refer to the case number (FP091077) which they have pending somewhere against someone and apparently relates to this proceeding. The difficulty and confusion is caused in part by Kessler and Abbas' filing of various lawsuits and pleadings without giving notice to anyone. They did, after the fact, file a motion for relief from stay which also contained a resurrected request that this Court abstain from hearing this case (docket #370) and that motion, along with others was set for hearing on December 8, 2006. At that hearing it became clear to the Court that even the Trustee was having difficulty keeping track

---

[26] A cursory review of the docket in the California federal court action (which appears as docket #382 in this proceeding) reveals that Kessler and Abbas failed to respond to an order to show cause issued by that court. Moreover their attempted appeal directly to the Ninth Circuit Court of Appeals was dismissed by the district court as frivolous and not taken in good faith. There is also a mandate, which Abbas mischaracterized as a remand, from the Ninth Circuit dismissing a direct appeal but this Court cannot determine whether the mandate relates to the same appeal dismissed by the district court because the pleadings filed by Kessler and Abbas are difficult to track.

14

of all the actions being prosecuted by Kessler and Abbas. Indeed at the December 8, 2006 hearing, the Trustee reported that he only learned of one of the actions that morning.

At the December 8, 2006 hearing this Court denied Kessler and Abbas's motion for relief and told them that they did not have the right to continue any of these lawsuits and ordered that they all be dismissed. On December 11, 2006 the Court entered a supplemental order (docket #387). That order provides:

> Whereas this matter came before the Court for a hearing on December 8, 2006 upon the Motion for Relief from stay and Mandatory Absentation [sic] Under Probate Exception [docket #370] filed by Amalia Kessler and Sam Abbas (hereinafter "Movants") said Motion having been denied from the bench for reasons set forth on the record, the Court hereby issues this Supplemental Order to clarify its Order [Docket #383] in light of the Movants' *pro se* status. The Movants do not have relief from stay and may not (1) institute any new litigation related to the property located at 2912 Second Street, Santa Monica, California or rights therein or (2) proceed with any existing litigation including, but not limited to the California state court cases referenced in the Motion [#B191667 and #WEP-023025] without first obtaining authorization from this Court. The Court considers the Movants' actions to be in violation of the automatic stay as discussed in a previously-issued Memorandum of decision [Docket #270], which is the subject of an appeal to the United States District Court of Massachusetts. The Court will take such measures as may be appropriate to enforce its Orders, including if necessary, imposition of monetary sanctions and/or incarceration.

Kessler and Abbas did not appeal either the order of December 8 or December 11, 2006. Nevertheless on or about December 15, 2006 Kessler and Abbas served the Trustee with a copy of an amended complaint they served in the California district court action (06-00712sjo). In the amended complaint they again seek equitable title to the Property. The Trustee filed an expedited motion for contempt and on December 28, 2006 the Court held a hearing on this latest motion.

This Court is cognizant that Kessler and Abbas face the loss of their use of the Property and understands that this prospect is frightening for them. But it does not excuse the flagrant disregard they have shown for the law and this Court's authority. Although they disagree that their actions violate the automatic stay, the law provides a proper avenue to pursue such disagreement. Kessler and Abbas were free to seek reconsideration or file an appeal. They chose neither course. Instead they are determined to do whatever it takes to remain in possession of the Property and apparently to obtain title to the same, even by fraudulent means and even if it means they ignore the clear language of the law and orders of this Court. The integrity of the judicial system cannot countenance such behavior. Thus, faced with the ongoing defiant behavior of Kessler and Abbas, the Court issued its December 28, 2006 order. Unless they obtain a stay of the enforcement of the order or purge themselves of the contempt, the Court will have no alternative but to impose the sanctions set forth in the order.

Dated: January 5, 2007

Joel B. Rosenthal
United States Bankruptcy Judge

cc: Amalia Kessler (by first class mail)
Sam Abbas (by first class mail)
David Nickless, Esq. (by CM/ECF)