**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| IN RE | : | CHAPTER 7 |
| TATYANA A. BERMAN | : | |
| DEBTOR | : | CASE NO.04-45436-JBR |
| DAVID M. NICKLESS, CHAPTER 7 TRUSTEE, | : | |
| PLAINTIFF, | : | |
| v. | : | AP. NO. 05-4225 |
| AMALIA KESSLER and | : | |
| JOHN DOES 1-3, | : | |
| DEFENDANTS. | : | |

**MEMORANDUM OF DECISION FOLLOWING REMAND ON MOTION OF DAVID M. NICKLESS, TRUSTEE, FOR SUMMARY JUDGMENT**

This matter previously came before the Court on a hearing on the Motion of David M. Nickless, Trustee, for Summary Judgment (Docket #228) and the Motion of Amalia Kessler for Summary Judgment ( Docket #238). Following the hearing and for the reasons set forth in the Memorandum of Decision (Docket #270) (the "Summary Judgment Decision"), the Court denied Ms. Kessler's motion (Docket #273) and granted the Trustee's summary judgment motion in part (Docket #271). The Court abstained from determining whether Ms. Kessler's life estate was revoked or terminated under California law. Both parties appealed.[1] The district court affirmed the orders with one exception, namely that this Court should have decided whether Ms. Kessler's life estate was terminated, and remanded the issue to this Court for determination.

---

[1] The appeal of the summary judgment orders was docketed in the district court as 06CV40240. It was consolidated with an appeal Ms. Kessler took from this Court's order (Chapter 7 Case No. 04-45436, Docket #47) granting the Trustee's motion to sell, which appeal was docketed at the district court as 07CV40138. The district court's decision and order appears on the docket of 06CV40240 at document #25; a copy of the same appears of this Court's docket in the adversary proceeding as #488.

**BACKGROUND**

In September 2004 Tatyana Berman (the "Debtor") filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code. The Debtor scheduled a remainder interest in property in Santa Monica, California (the "Property") under the will of Gita Caplan, the Debtor's cousin (the "Testatrix"). Ms. Kessler, who is approximately 85 years old, was bequeathed a life estate in the Property. The Trustee commenced the above adversary proceeding against Ms. Kessler and John Does, unknown individuals believed to be residing at the Property.[2] Among other things, the Trustee sought a declaratory judgment that Ms. Kessler's life estate terminated as a result of her not paying the ongoing expenses of the Property[3] and by her admittedly fraudulent recording of a deed purporting to convey full title to the Property to herself[4] in violation of the will's *in terrorem* clause.[5] Protracted and contentious litigation ensued and

---

[2]The Trustee subsequently identified Sam Abass as one of the John Does.

[3]The will states in relevant part that
> my friend, Amalia Kessler, be allowed to remain living in [the Property] so long as she desires during her lifetime, rent free. Any expenses in connection with [the Property], such as utilities, insurance, taxes, etc. are to be paid by Amalia Kessler while she has use of [the Property.]

[4]As the Court observed on several occasions, Ms. Kessler's pleadings, as well as her arguments to the Court, have been replete with inconsistencies and non sequiturs. In her answer and counterclaim (Docket #9) she acknowledged she recorded the deed but claimed it was done "under the color of the title" and that she owned the Property by adverse possession. In the same answer and counterclaim, Ms. Kessler alleged that the Testatrix told her as an "excited utterance" that the Property "would eventually pass to her in a subtle way" after she "paid the taxes for 5 years" and continued to live in the Property. In her Declaration in Support of Motion to Dismiss (Docket #21), she claimed she held a life estate. As discussed below in this decision, at the hearing on the cross-motions for summary judgment, Ms. Kessler's attorney conceded that the recording was unlawful.

[5]The will provides
> If any person shall contest this will or any of its parts or provisions

continues to the present. The details of this litigation and others commenced by Ms. Kessler and Mr. Abbas in this Court and in other fora are set forth in the Memorandum of Decision on Motion of David M. Nickless, Trustee, for Sanctions for Wilful Violation of the Automatic Stay and for Violation of this Court's Order of December 11, 2006 (Docket #415) (the "Sanctions Decision").[6]

> or seek legal action to obtain any part of my estate contrary to the provisions hereof, I specifically direct that such person is not to receive any share, part or benefit of or from my estate, and any share or interest given to such person shall be revoked and shall be paid as though such person had died, without issue, before my death.

[6]As I noted in that Sanctions Decision, Ms. Kessler sought to have me disqualify myself on the basis of several false allegations, including that I am biased against "out of towners," that I hold a financial interest in this litigation and its outcome, and that I have had *ex parte* communications with the Trustee (docket #85). Since that time Ms. Kessler has continued to file pleadings in various courts in which she repeats the same accusations and therefore, I have reexamined the issue of whether anything in 28 U.S.C. § 455 mandates my recusal, including specifically whether my impartiality could be questioned "from the perspective of an objective, disinterested observer *fully informed of the underlying facts.*" *Ford v. Suffolk County*, 133 F. Supp.2d 116, 119 (D. Mass. 2001) (internal quotations and citations omitted). I have concluded that my recusal is not necessary or appropriate. To permit a litigant to employ such tactics as Ms. Kessler has undertaken to obtain a jurist's recusal would encourage "judge shopping."

What I observed in the Sanctions Decision, however, deserves repeating.

> On January 12, 2006 the Court, and by that term I am referring to myself in my official capacity, also denied the motion to disqualify me without a hearing (docket #97). Given the seriousness of Kessler's allegations that the Court has, again specifically meaning I have, acted improperly in this matter, the Court wishes to be clear that there have been several colloquies regarding these charges with Kessler and Abbas during various hearings. To ensure that I do not, and did not, hold any pecuniary interest in this litigation or have any relationship that might appear as improper, I have questioned Kessler and Abbas on several occasions and asked them to describe the source of their concern so that I may take appropriate action, including recusing myself if necessary. Their only explanation is that the Trustee earns a commission from the bankruptcy estate and I must rule on his commission and

The parties filed motions for summary judgment (docket #228 and #238). In granting the Trustee's summary judgment motion, the Court abstained from the issue of whether Ms. Kessler's life estate has been terminated or ought to be rescinded but authorized the Trustee to market the Property, a remedy available under California law, and, if the Trustee did not undertake to have the California probate court or other court of competent jurisdiction determine the status of Ms. Kessler's life estate, the Court stated it would determine the value of the life estate. (See Order granting Trustee's motion for summary judgment, Docket #271). Ms. Kessler was also ordered to file a deed conveying the Property to the Trustee in his representative capacity, subject to her life estate, essentially to correct the fraudulent deed she had previously recorded. She sought and obtained a stay of the order granting summary judgment conditioned

---

attorneys' fees. The only basis for their accusation of *ex parte* communications is that I, as noted, have ruled on some of their motions without a hearing. As I have explained to Kessler and Abbas on a number of occasions, that the Trustee earns a commission as set forth in the Bankruptcy Code and that I must review his fees does not render either of us unable to carry out our respective responsibilities. I have ruled on motions without a hearing when I believed it was appropriate to do so. As I have explained to Kessler and Abbas, a bankruptcy court is not required to hold a hearing on every motion that comes before it. That any court rules on a matter without hearing oral arguments should not be seen as a nefarious plot to deny litigants their day in court nor as evidence that a court is having *ex parte* contact with another party. Despite this Court's efforts to explore Kessler and Abbas' concerns and despite this Court's attempts to explain that their proffered "reasons" why they believe they are being treat unfairly do not support the charges they have hurled at this Court and the Trustee, they persist in alleging the themes of bias, prejudice, and financial interest. Although the Court will not detail the attacks any further, it notes that much of Kessler's and Abbas' discourse has devolved into *ad hominem* attacks and the invectives hurled by them have become increasingly inappropriate.

on the posting of a bond to offset the mounting unpaid real estate taxes and physical deterioration of the Property.[7] Ms. Kessler and Mr. Abbas were given a period of time to obtain a bond. Despite several extensions, a bond was not posted and the stay expired. The time within which Ms. Kessler was to file a deed giving title in the Property to the Trustee also expired long ago without Ms. Kessler filing a corrective deed. The Property was sold by the Trustee pursuant to this Court's Order of March 29, 2007. (see Case No. 04-45436, Docket # 47).

On appeal the district court reversed this Court's decision to abstain from deciding whether Ms. Kessler had forfeited her life estate and remanded the issue to this Court for determination. After the district court's order became final, this Court issued an Order To Supplement whereby the parties were given an opportunity to supplement their pleadings regarding Trustee's motion for summary judgement or the opposition thereto only to the extent there was new information to assist the Court in deciding whether Ms. Kessler's life estate had been terminated. Only the Trustee filed such a supplement.[8]

**FACTS REGARDING THE LIFE ESTATE**

    **The State Court Orders of 1992 and 2006**

---

[7]Ms. Kessler and Mr. Abbas frequently represented that the Property was in poor condition.

[8]Copies of the Court's May 5, 2008 Order to Supplement were mailed to Ms. Kessler and Mr. Abbas at the post office box address which Ms. Kessler has been including below her signature line in pleadings she has filed in various courts. This is the same address that the Trustee had previously confirmed was the one he had for Ms. Kessler and Mr. Abbas. A copy of the Order was also mailed to Ms. Kessler at the Property's address in case she had provided the United States Postal Service with different forwarding instructions. None of the mailings to Ms. Kessler or Mr. Abbas were returned to the Court. It is a party's obligation to notify the Court of any change in mailing address. MLBR 2002-4.

In addition to the bequests to the Debtor and Ms. Kessler, the will further provided for an alternative vesting of the Property in the event that certain conditions occurred. Specifically it provided that "*In the event Tatyana Berman should predecease me, or the life tenancy given to Amalia Kessler should cease for any reason, then this bequest shall go to the children of Tatyana Berman, namely, Solomon Berman and Jacob Berman, or the survivor between them*" ("Alternate Vesting Clause").

Ms. Kessler was a co-executor under the will. She and her co-executor, Mark Gilder, filed their account with the Superior Court for the County of Los Angeles, California. The Superior Court issued an order ("1992 Order"), which stated, in relevant part, "*To Tatyana Berman, the [Property] with a life estate to Amalia Kessler…Amalia Kessler is to be allowed to remain living in said residence so long as she desires during her lifetime, rent free; Any expense in connection with said house, such as utilities, insurance, taxes, etc. are to be paid by Amaila Kessler while she has use of said residence*." The Alternative Vesting Clause was not included in the 1992 Order.

The Superior Court entered a final order in 1993 and discharged Kessler and her co-executor in 1994.[9] Kessler Declaration at p. 1. Ms. Kessler conceded at the Court's hearing on September 7, 2006 on the motions for summary judgment[10] that the estate had been "fully and finally probated"; that "there was nothing" left to be done; and that there is "no estate pending" at that time. TR. p. 17, 20, 22, 59.

---

[9] See the "Declaration of Amalia Kessler in Support of Nunc Pro Tunc Order Correcting Order For Preliminary Distribution," which was attached as an Exhibit 1 [#256] to the Joint Motion of the Trustee and Debtor for Sanctions and Declaration of Order Void Ab Initio [#247]. All references to this document will be cited as Kessler Declaration at p. #,.

[10] All references to the transcript of the Court's September 7, 2006 hearing will be cited as TR., p. # . The Transcript appears on the docket as document #265.

Throughout this litigation, the Court relied on the 1992 Order in recognizing the Debtor as holding the remainder interest in the Property. Whether anyone else, namely Solomon and Jacob Berman ("Debtors Sons"), held a remainder interest was an issue discussed before this Court on March 23, 2006,[11] but at that hearing, the Court made clear it would continue to recognize the finality of the 1992 Order. TA., t. 3:06.[12] On April 18, 2006, Ms. Kessler, through her attorneys,[13] filed a document with the Superior Court, titled the "Declaration of Amalia Kessler in Support of Nunc Pro Tunc Order Correcting Order For Preliminary Distribution" ("Declaration"), which stated that it had recently "come to [Ms. Kessler's] attention" that the 1992 Order was incomplete because it "inadvertently" omitted the Alternate Vesting Clause, and requested that it be amended upon the Superior Court's own motion.[14] Ms. Kessler and her attorneys did so *ex parte*, without notice to the Debtor or Trustee, without relief from stay from this Court, and without alerting the Superior Court of the pending bankruptcy or related adversary proceeding. The Superior Court issued a Nunc Pro Tunc Order ("2006 Order") on June 13, 2006, inserting the Alternate Vesting Clause. The Court, along with the Trustee, learned of the 2006 Order when Kessler filed for summary judgment on August 11, 2006. The order granting the Trustee's summary judgment motion expressly declared the 2006 Order void

---

[11] The Court takes judicial notice of its hearing on this date. All references to the tape of that hearing will be cited as TA., t. --:--.

[12] Since that hearing, the Trustee received assignments from the Debtor's Sons of any expectancy interest they may have in the Property. Although Ms. Kessler questioned the validity of the assignments, she has offered no credible evidence to support a challenge. The validity of the assignments, however, is not before the Court, and given the Court's ruling, affirmed by the district court, that the 2006 Order was void *ab initio*, the Debtor, not her Sons, holds the remainder interest based on the 1992 Order.

[13] Foley & Lardner, LLP entered its appearance on behalf of Kessler on February 23, 2006. Until then, Kessler acted *pro se.*

[14] Ms. Kessler's co-executor joined in the Declaration by filing a separate document to that effect with the Superior Court.

*ab initio.*

## The 2001 Deed and Ms. Kessler's Claims of Ownership

In 2001, Ms. Kessler executed and recorded a grant deed ("Grant Deed") in Los Angeles County, California, which purported to convey the fee interest in the Property from the Testatrix to herself.  During the initial stages of this litigation, Ms. Kessler stated in her pleadings to the Court that she was entitled to the fee interest in the Property.  She claimed that the Testatrix told her as "excited utterances" that the Property would "pass to her eventually after five years of continuous possession and paying taxes", and also that she "acquired the estoppel of the deed in January 2001 through cypress [sic], and adverse possession."  She subsequently withdrew those claims, conceding that she is not entitled to the fee interest.  Specifically, her attorney conceded on her behalf that she is no longer "…purporting in any way to have anything but a life estate in th[e] [P]roperty." TR. p. 18.  Her attorney further stated that she "absolutely should not have [filed the deed]" and that it was "absolutely [the wrong thing to do]." TR. p. 22.  She proffered as an explanation that she recorded the Deed, *inter alia*, to qualify for participation in the California State Controller's Office Property Tax Postponement Program ("Tax Postponement Program"). (Answers of Defendant Amalia Kessler to Plaintiff's First Set of Interrogatories, attached as Exhibit  Under the Tax Postponement Program, a qualified homeowner is able to postpone payment of property taxes.  In exchange, the State Controller's Office secures the amount owed with a lien on the property and requires it to be paid with interest upon the homeowner's death.[15] Ms. Kessler otherwise would not have qualified because she needed the consent of the

---

[15] The postponed amount with interest is due when the homeowner dies without a qualified individual continuing to reside in the property, moves out of or conveys title to the property, or becomes delinquent on future property taxes or senior liens.

remaindermen, whose whereabouts she claimed were unknown to her. Despite at least one Court order expressly requiring her to file a corrective deed, Ms. Kessler failed to do so.

**The 2006 State Court Action**

As the Court was preparing to issue its Summary Judgment Decision, it learned that Ms. Kessler once again claimed to own the fee interest in the Property. On September 14, 2006 she and Mr. Abbas filed an action in the California Superior Court, SC091077, against the Trustee and Does 1-5. A copy of that complaint is an exhibit to the Trustee's Supplement to His Motion for Summary Judgment (Docket #492).[16] In the complaint Ms. Kessler sought to revoke the probate of the will. Specifically Ms. Kessler and Mr. Abbas alleged that the will made as a direct result of the undue influence exercised by Mark Gilder; that the will "does not conform to statutory requirements of California regarding the execution of the will"; the will was not the Testatrix's true last will and testament; that the trustee actually undertook an attack on the will; and that Mr. Gilder violated his duty of care when drafting the will. Ms. Kessler also alleged that the will attached to the Testatrix's signature page was swapped for the one the Testatrix intended as her last will and testament. She further sought to quiet title to the Property in herself, claiming that the Testatrix promised to make a will, leaving the Property to Ms. Kessler and that she, Ms. Kessler, cared for the testatrix for twenty years without pay in exchange for the Testatrix's promise and thus was entitled to the deed to the Property for the purpose of recouping

---

[16]The Court was aware of the 2006 state court action and on September 28, 2006 issued an Order to Show Cause (Docket #274) why Ms. Kessler, her attorneys, and Mr. Abbas should not be sanctioned for violating the automatic stay in commencing this action. The Court released the show cause as to Ms. Kessler's attorneys who had no knowledge that action SC091077 had even been commenced (Docket #380). The Court also released the show cause as to Ms. Kessler after then counsel obtained her dismissal as a party to the action (Docket #380). As Mr. Abbas had not dismissed the action, the Court continued the show cause hearing. Ultimately the Court enforced the show cause against Mr. Abbas (Docket #434).

her money.  **Maintenance of the Property**

As noted, Ms. Kessler did not pay the real estate taxes on the Property. Instead she sought and obtained a deferral of the taxes. Taxes continued to accrue and along with the interest on the taxes, the obligation constituted a lien against the Property.

The will also charges Ms. Kessler, as the life tenant, with the responsibility of maintaining the Property. Yet on several occasions at hearings before this Court. Ms. Kessler acknowledged she was unable to afford the upkeep and she claimed the Property was in disrepair.

**DISCUSSION**

**Standard for Summary Judgment**

Under Fed. R. Civ. P. 56, applicable through Fed. R. Bankr. P. 7056, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is only "genuine" if there is sufficient evidence to find in favor of the nonmoving party. *Hope Furnace Associates, Inc. v. F.D.I.C.*, 71 F.3d 39, 42 (1st Cir. 1995) (citing *NASCO, Inc., v. Public Storage, Inc.*, 29 F.3d 28, 32 (1st Cir. 1994)). The evidence of the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986). If after reviewing the evidence, there can be only one reasonable conclusion, summary judgment is appropriate. *Id.* at 250. Furthermore, summary judgment may be entered in favor of the nonmoving party, even in the absence of a motion by that party. *Boston Public Hous. Tenants' Policy Council, Inc.* v. Lynn,

388 F. Supp. 493, 498 (D. Mass. 1974).

### **Forfeiture under the Will**

This Court previously determined, and the district court affirmed, that the so-called "probate exception" to federal court jurisdiction did not apply to the adversary proceeding as the Testatrix's estate had long since been administered and the Property was no longer property of the decedent's estate. (*See* Summary Judgment Decision at 9-11).

California Probate Code § 21303[17] provides:

> Except to the extent otherwise provided in this part, a no contest clause is enforceable against a beneficiary who brings a contest within the terms of the no contest clause.

The California Supreme Court "has repeatedly declared that a provision in a will providing for forfeiture of a legacy in the event of a contest of the will by the legatee is not contrary to public

---

[17]As the district court noted, the California Probate Code underwent some significant amendments, including the repeal and replacement of the Probate Code by legislation enacted in 1990 that became effective on July 1, 1991. The provisions upholding the validity of *in terrorem* clauses was not substantively affected, however.

> In 1989, the Legislature enacted a series of statutes that codified much of the law governing enforcement of no contest clauses. (Stats.1989, ch. 544, § 19, p. 1825.) These statutes were repealed and reenacted the following year. (Stats.1990, ch. 79, § 14, operative July 1, 1991.) Included in these reenacted statutes is a codification of the principle that a no contest clause is generally enforceable against a beneficiary who brings a contest within the terms of the clause (Prob. Code, § 21303 [subject to certain exceptions not applicable in this case] ), and the principle that in determining the intent of a testator or other transferor, a no contest clause shall be strictly construed (*id*., § 21304).
>
> *Burch v. George,* 7 Cal.4th 246, 254, n.6, 866 P.2d 92, 96, n.6, 27 Cal.Rptr.2d 165, 169, n.6 (1994)(bracketed material included in the quotation).

policy, is valid and binding upon the legatee, and is to be given effect according to the intent of the testator." *Estate of Friedman,* 100 Cal.App.3d 810, 814, 161 Cal.Rptr. 311, 313 (Cal.App. 1979). "The obvious purpose of no-contest ("in terrorem") clauses is to discourage will contests by imposing a penalty of forfeiture against beneficiaries who challenge the will. No-contest clauses are valid in California and have been said to be favored by the public policies of discouraging litigation and giving effect to the purposes expressed by the testator." *Estate of Black*, 160 Cal.App.3d 582, 586-587, 206 Cal.Rptr. 663, 665 (Cal.App. 5 Dist.1984). "In determining the intent of the transferor, a no contest clause shall be strictly construed." California Probate Code § 21304.[18] There must be " a clear and unequivocal attack upon the will before invoking the penalty contained in the *in terrorem* clause...." *Id.* (Internal quotation and citation omitted). What constitutes a "clear and unequivocal attack" depends on the specific circumstances of each case.

The Trustee seeks a declaration that Ms. Kessler's life estate has been terminated by her 2001 recording of the Grant Deed. As the district court noted, this is a difficult question and one of first impression under California law. It does indeed hinge on whether the recordation is a "legal action" within the meaning of the will's *in terrorem* clause. But as the district court also noted, this Court does not need to speculate as to what constitutes a "legal action" under California law nor does it need to address whether the recordation violated California statutes.[19]

---

[18]Section 21304 of the current Probate Code simply restated the earlier section of the repealed Code.

[19]As the district court observed, the Trustee alleges that Ms. Kessler's recording of the Grant Deed violated Cal. Prob. Code § 21300(c), a section that was not in existence when the Grant Deed was recorded. The prior version of § 21300 stated in pertinent part:

> (a) "Contest" means an attack in a *proceeding* on an instrument or on a provision in an instrument. (Emphasis added).

Similarly the Court can bypass the issue of whether Ms. Kessler's role in obtaining the 2006 Order constituted an indirect attack under § 21300(c), as amended effective January 1, 2003.[20] Additionally the court does not need to undertake a lengthy analysis and discourse of whether the nonpayment of taxes and failure to maintain the Property trigger forfeiture or give raise only to an action for damages or waste. Instead, Ms. Kessler's initiation of SC091077 clearly is a contest that triggered the will's forfeiture provision.

In 2002 the California legislature amended § 21300, effective as of January 1, 2003, to delineate certain actions which constituted "direct contests" to a will or other instrument. *See* Stats. 2002, c. 150 (S.B. 1878).[21] Contests include direct contests which, in turn, include

---

The filing of a deed does not appear to be the kind of action, namely a proceeding, contemplated as violating an *in terrorem* clause by § 21300.

[20] It is the version of § 21300, effective as of January 1, 2003, that defines a contest to include both direct and an indirect contests. Indirect contests refers to

> a pleading in a proceeding in any court that indirectly challenges the validity of an instrument or one or more of its terms based on any other ground not contained in subdivision (b) [which enumerates grounds that are deemed to be "direct contests"], and that does not contain any of those grounds.

[21] The 2003 version applies to the 2006 state court action even though the will was executed and the Testatrix died prior to its enactment. Cal. Prob. Code § 3 provides in relevant part:

> 3. (a) As used in this section:
> (1) "New law" means either of the following, as the case may be:
> (A) The act that enacted this code.
> (B) The act that makes a change in this code, whether effectuated by amendment, addition, or repeal of any provision of this code.
> (2) "Old law" means the applicable law in effect before the operative date of the new law.
> (3) "Operative date" means the operative date of the new law.
> (b) This section governs the application of a new law except to the extent otherwise expressly provided in the new law.
> (c) Subject to the limitations provided in this section, a new law applies on the operative date to all matters governed by the new

> a pleading in a proceeding in any court alleging the invalidity of an instrument or one or more of its terms based on one or more of the following grounds:
>
> (1) Revocation.
> (2) Lack of capacity.
> (3) Fraud.
> (4) Misrepresentation.
> (5) Menace.
> (6) Duress.
> (7) Undue influence.
> (8) Mistake.
> (9) Lack of due execution.
> (10) Forgery.

Ms. Kessler commenced SC091077 on grounds specifically defined as direct contests under at least § 21300(b)(1), (3), (7) because the action sought to revoke the probate of the will, and alleges both fraud and undue influence. Moreover, Ms. Kessler's voluntary dismissal of the state court action, at least with respect to herself as a plaintiff, does not save the proceeding from being a contest. Although there have been some reported cases in which parties have argued their contests were no more than "paper contests," a term not defined in the Probate Code but found in case law, the California courts have a history of rejecting this argument. For example, in *In re Hite's Estate*, 155 Cal. 436, 101 P. 443 (1909), a legatee, who filed a "Contest of Codicil" on the grounds of undue influence and lack of mental capacity, settled the action prior to a court hearing. Because of that, she argued she had not contested the will. The court disagreed.

> It does not follow herefrom that the mere filing of a paper contest, which has been abandoned without action and has not been

---

law, regardless of whether an event occurred or circumstance existed before, on, or after the operative date, including, but not limited to, creation of a fiduciary relationship, death of a person, commencement of a proceeding, making of an order, or taking of an action. Stats. 1990, c. 79 (A.B. 759), § 14.

14

> employed to thwart the testator's expressed wishes, need be judicially declared a contest. But wherever an opponent uses the appropriate machinery of the law to the thwarting of the testator's expressed wishes, whether he succeed or fail, his action is a contest.

*Id.* at 444, 101 P. 44 at 446. *See also Estate of Pittman,* 63 Cal.App.4th 290, 295, 307 (1998) (affirming determination that challenge to trust was a contest despite dismissal of petition less than three months after case was filed).

**CONCLUSION**

For the reasons set forth herein, the Trustee's Motion for Summary Judgment with respect to Count One is GRANTED in all respects. A separate order declaring that the life estate of Amalia Kessler was forfeited will enter.

*/s/ Joel B. Rosenthal*

Dated: May 22, 2008

        Joel B. Rosenthal
        United States Bankruptcy Judge

cc:    Amalia Kessler (by first class mail)
        Sam Abbas (by first class mail)
        David Nickless, Esq. (by CM/ECF)